# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER GOODVINE,

    Plaintiff,

v.                                                                                      Case No. 16-C-890

BRETT VANDEWALLE, et al.,

    Defendants.

## ORDER DENYING PLAINTIFF'S MOTION
## FOR SANCTIONS AGAINST DEFENDANTS

Plaintiff Christopher Goodvine, an inmate serving a state sentence at Green Bay Correctional Institution (GBCI) brought this pro se civil rights action pursuant to 42 U.S.C. § 1983 against the warden, the security director, and various correctional officers and staff, alleging that they had violated the Eighth Amendment prohibition of cruel and unusual punishment by their deliberate indifference to his stated intent to harm himself. Goodvine alleges in his complaint that he is seriously mentally ill and has been diagnosed with uncontrollable urges to engage in cutting. ECF No. 1 at 2. He further alleges that after he was placed on "observation status" or "suicide watch" on May 24, 2016, because of his "suicidal gestures/ideations," staff failed to monitor him and he attempted suicide and seriously injured himself. The defendants are alleged to have then "acted to conceal their deliberate indifference by destroying official documents." The complaint alleges that the defendants compounded their violation of Goodvine's constitutional rights by denying him medical attention for his injuries and placing him in painful eight-point restraints. *Id.*

As explained more fully in a separate decision and order to follow, the defendants' motion to dismiss this case as a sanction against Goodvine for filing a false and fraudulent declaration by former Correctional Officer Davee McClinton and lying about it under oath will be granted. This decision will address Goodvine's motion for sanctions against the defendants (ECF No. 97). For the reasons that follow, Goodvine's motion will be denied.

On December 8, 2017, Goodvine filed a motion for sanctions and other appropriate relief against the defendants for conspiring with GBCI officials for the purpose of reading his in-coming and out-going personal correspondence with his fiancé, Maxine-Jonise D'Acquisto. ECF No. 97. Ms. D'Aquisto had been identified as a witness Goodvine intended to call at the evidentiary hearing that was scheduled to be held January 3, 2018, on the defendants' motion to sanction Goodvine for fabricating false evidence to support his claim against them. On December 18, 2017, I ordered the defendants to respond to Goodvine's motion by December 29, 2017. ECF No. 99. Based on the defendants' response and the evidence presented at the January 3, 2018 hearing, I am satisfied that the current defendants took no actions that would warrant any sanction by the court against them.

As the defendants point out in their response, communications between Goodvine and his fiancé are not privileged and were plainly relevant to the motion before the court. Goodvine had claimed that he sent Ms. D'Aquisto an earlier version of a declaration purportedly signed by then Correctional Officer McClinton stating that he was instructed by his superior to alter records relating to Goodvine's claim. Any correspondence Goodvine sent her concerning the purported declaration or instructing her what to do with it were clearly discoverable. Counsel for the defendants had subpoenaed all such correspondence from Ms. D'Aquisto prior to her deposition. She failed to

produce any documents, claiming that they were too voluminous and not stored in any discernable order at her residence.

Even beyond the parameters of this case, Goodvine has no constitutional right that prevents guards or correctional officers from reading his non-legal mail. While inmates have a First Amendment right both to send and receive mail, that right does not preclude prison officials from examining mail to ensure that it does not contain contraband. *Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005). Unless the mail is considered legal mail, i.e., mail to or from an attorney, prison officials may also constitutionally read an inmate's mail. *See Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986) (noting that "prison officials could read non-privileged mail, on a spot-check basis, in order to detect possible escape plans or other threats to jail security.") (citing *Smith v. Shimp*, 562 F.2d 423 (7th Cir. 1977)). In fact, even pretrial detainees have no right to prevent their mail from being read for security purposes. In *Smith*, the court took judicial notice of "the fact that an opportunity for secret and lengthy communication between a detainee and his friends or relatives would substantially enlarge his opportunity for successful escape." *Id.* at 426.

Regulations promulgated by the Wisconsin Department of Corrections also make explicit that "Correctional staff may read mail, with exceptions not relevant here, "in order to ensure the safety of the institution, institution staff, inmates and the general public." Wis. Adm. Code § DOC 309.04(4)(b). It thus follows that Goodvine has no constitutional or state law right to prevent correctional officers from reading his non-legal mail. As the defendants noted in their response, however, correctional staff at GBCI also had good reason to monitor Goodvine's correspondence with Ms. D'Aquisto in particular.

3

As part of the defendants' response to Goodvine's motion for sanctions, counsel for the defendants filed under seal an incident report from August 2016 that showed Goodvine had been plotting attempts to meet with Ms. D'Aquisto outside of prison. ECF No. 102-1. The incident report was sealed at the defendants' request by order entered at the hearing so as to protect the institution's investigative techniques for uncovering security threats. ECF No. 101, 107. A redacted copy of the sealed report, subsequently filed at the court's direction, references conversations on or about August 10, 2016, in which Goodvine told D'Aquisto that he had just ingested 100 pills and expected to be taken to a hospital in Green Bay within the hour. Goodvine instructed D'Aquisto to meet him at the hospital and repeatedly told her to remember to put on the scrubs like she did when he was at Milwaukee Secure Detention Facility. In a later call that was monitored, D'Aquisto states that she was headed to the hospital on August 10, 2016, but stopped at Goodvine's sister's house in Menasha on her way to Green Bay and never made it to the hospital. ECF No. 102-2 at 2. Based on this report, GBCI was more than justified in closely monitoring Goodvine's mail.

The court addressed the August incident report at the evidentiary hearing on the defendants' motion to sanction him for fabricating evidence against them, but at that time, Goodvine had not seen even the redacted copy of the report. The issue of his mail arose at the hearing because of Goodvine's assertion that there was an earlier version of the declaration he claimed Officer McClinton had signed than the one he filed in this case. The earlier version had supposedly been mailed to D'Aquisto shortly after it was signed in June 2016. Goodvine claimed that Social Worker Chris Heil had been monitoring his mail and must have confiscated the earlier version of the declaration that Ms. D'Aquisto had testified she mailed back to Goodvine at some unspecified time. Ultimately, I concluded that D'Aquisto's testimony about the earlier version was irrelevant to the

4

issue of whether Goodvine had fabricated the declaration he filed in this case. Nevertheless, Goodvine believes Heil's actions in monitoring his mail casts doubt upon the credibility of the GBCI administration generally.

Earlier in the case when it was assigned to Judge Clevert, Goodvine had filed a motion for a preliminary injunction claiming, among other things, that GBCI was interfering with his court filings and his mail. ECF No. 11. Judge Clevert ordered the defendants to respond, and on October 6, 2016, the defendants filed a declaration by John Kind, the Security Director at GBCI, which stated that "Goodvine is currently not on mail monitor and his mail is being processed and delivered the same as every other inmate." *Id.* ¶ 6. Kind further stated in the declaration, "[a]t no time have I or other GBCI staff interfered with plaintiff's filings to this court, withheld or destroyed incoming or outgoing mail and/or refused to facilitate legitimate calls with attorneys." *Id.* ¶ 13. Goodvine introduced evidence at the evidentiary hearing that at or around this same time Social Worker Heil had in fact been monitoring his mail. Based on this fact, he argues that Security Director Kind must have lied in his October 6, 2016 declaration filed with the court.

Counsel for the defendants conceded that Ms. Heil had been monitoring Goodvine's mail with Ms. D'Aquisto at various times but denied that Social Worker Heil confiscated any mail that was sent to him. Counsel indicated he could not explain the apparent inconsistency with Security Director Kind's declaration filed with the court on October 6, 2016, but noted that the institution had good reason to monitor Goodvine's mail. Counsel also noted that Social Worker Heil is not currently a party to the action and neither for that matter is Security Director Kind. Thus there is no basis to impose sanctions on the defendants.

5

I agree that Goodvine's motion to sanction the defendants for monitoring his mail (ECF No. 97) must be **DENIED**. As explained above, there was good reason to monitor Goodvine's mail and no legal proscription against doing so. There is also no evidence that any of the defendants currently in the case were involved in any monitoring of Goodvine's mail that might have occurred. But the issue cannot rest there. Goodvine is being sanctioned for filing a false and fraudulent sworn declaration with the court, conduct that the court has characterized as destructive of the integrity of the process and so serious as to warrant the severe sanction of dismissal. As he points out, however, Security Director Kind also filed a declaration in the case that might contradict the facts as we now know them. Accordingly, to avoid any appearance of a double standard, **counsel for the defendants is directed to explain within ten days of this order, by sworn declaration or otherwise, the apparent contradiction between the statement in Paragraph 6 of Security Director Kind's October 6, 2016 declaration and the activities of Social Worker Heil.**

**SO ORDERED** at Green Bay, Wisconsin this 17th day of January, 2018.

/s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court